**KARPF, KARPF & CERUTTI, P.C.**
By: Julia W. Clark, Esq. (Attorney ID 37052011)
Ari R. Karpf, Esq. (Attorney ID 021842003)
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
P - (215) 639-0801
F - (215) 639-4970

| | |
|---|---|
| MONIQUE BOURQUE : <br> 220 Cedar Avenue : <br> Lindenwold, NJ 08021 : <br> : <br> Plaintiff, : <br> v. : <br> : <br> AMAZON.COM, INC. *d/b/a* : <br> AMAZON.COM : <br> 410 Terry Avenue North : <br> Seattle, WA 98108 : <br> and : <br> AMAZON.COM SERVICES, INC. : <br> 202 Westlake Ave. N : <br> Seattle, WA 98108 : <br> and : <br> AMAZON.COM SERVICES, LLC : <br> 202 Westlake Ave. N : <br> Seattle, WA 98108 : <br> : <br> Defendants. : <br> : | SUPERIOR COURT OF <br> GLOUCESTER LAW DIV. <br><br> CIVIL ACTION <br><br> No.: <br><br><br><br> **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Monique Bourque (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by Amazon.com, Inc., Amazon.com Services, Inc., and Amazon.com, LLC (*hereinafter* referred to collectively as "Defendants") of the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-

1 *et. seq.*). Plaintiff asserts herein *inter alia* that she was sexually harassed and retaliated against for complaining of sexual harassment.

## II. Parties

2. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

3. Plaintiff is an adult who resides at the above-captioned address.

4. Defendants are multiple companies with varying names for formality purposes, but they jointly operate, manage, and control a distribution center (among others) doing business as Amazon or AYC1 Amazon Fulfillment Center.

5. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## III. Factual Background

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff was hired by Defendants effective on or about August 16, 2020; and in total, Plaintiff was employed with Defendants for approximately 5 months (until termination in January of 2021, as discussed *infra*).

8. Plaintiff had solely worked within Defendants' location doing business as AYC1 Amazon Fulfillment Center. This location is at 240 Mantua Grove Road, West Deptford, New Jersey. And the location in which Plaintiff worked and references herein was that of a vast warehouse.

2

9. Plaintiff was considered to work within Defendants' PCF department, and her job entailed picking (finding items for shipment and fulfillment), counting (engaging in inventory review), and other labor-related work for Defendants upon request.

10. Plaintiff's supervisors in her department were Bilal and Etienne (last names unknown and first names phonetically spelled). There is very little information given about management data or management hierarchy to employees, and no such information was effectively disseminated in writing. Plaintiff and other laborers learn on-the-job what is expected and have limited interactions with supervisors.

11. Shortly after Plaintiff had been hired, and primarily from September through October of 2020, Plaintiff experienced very significant sexual harassment. The individual who sexually harassed Plaintiff was Robert Estacio (spelled phonetically). The sexual harassment was <u>very</u> serious, and it was <u>very</u> pervasive. Estacio by way of examples:

   (a) Continually commented about Plaintiff's looks;

   (b) Continually propositioned her for a relationship;

   (c) Would not stop asking Plaintiff on dates, to hug him, and making comments about her breasts, body and telling Plaintiff she was beautiful, cute or hot ***regardless of Plaintiff asking him to stop and not to talk with her***.

12. In addition to the above types of comments and gestures that were daily and weekly towards Plaintiff (as referenced above by Estacio), Estacio would literally stare at Plaintiff, intentionally walk in her areas, tried to get in her car without invitation, and follow her at times.

13. Plaintiff was so frightened by Estacio that she escalated complaints of sexual harassment. Plaintiff recalls verbally expressing concerns to Defendants' supervisors as early as

3

September but then having to escalate verbally and in writing by early October 2020 because the situation was not being remedied.

14. It is exceptionally hard to communicate with management, HR or corporate within Defendants, and very little contact information is available. Plaintiff was not given any updates about her complaints of sexual harassment. Plaintiff even went to HR / Management explaining throughout October of 2020 that she did not feel safe, was seeking therapy, and was only told by HR the department doesn't discuss the status of investigations.

15. In total, Plaintiff was sexually harassed for about 2 months (between September – October 2020). Plaintiff was subjected to a hostile work environment (post-complaints) without data, information, remedy **or** follow up from mid-September 2020 through late October of 2020 (roughly 1.5 months). *This hostile work environment that was permitted to continue was outrageous.*

16. In late October 2020, when Plaintiff was again expressing concerns to management, she was told it shows under his name "pending termination" and Estacio appeared to have ceased working for Defendants by late October of 2020. Plaintiff did not notice his presence at this point in time.

17. *Importantly, other women had been sexually harassed as well by Estacio and other complaints were made about him to Defendants. By way of example only, Plaintiff was told by another coworker Emilie that she also escalated complaints of sexual harassment to HR and that she had been followed and subjected to similar types of sexual harassment by Estacio. She, like Plaintiff, was not given any updates about potential remedial action(s).*

18. By mid-November 2020, Plaintiff suffered a very serious anxiety attack when she again saw Estacio back in the workplace continuing to work. Plaintiff complained to her

immediate supervisors and HR that: (a) she cannot be around him; (b) she is having anxiety attacks with him being at work and walking so closely by her (intentionally); and (c) he <u>is still</u> following Plaintiff around and staring at her *even though he ceased comments*. Estacio had even intentionally walked by Plaintiff's car in the parking lot at times to see her (following his resumption of work in November of 2020).

19. Plaintiff had escalated complaints to her supervisors, to other management, and to HR personnel such as Katie and Sarah (last names unknown).

20. Plaintiff used federally-protected medical leave in the timeframe of December 6, 2020 through December 26, 2020 due to COVID illness and/or quarantine. This leave was approved by Defendants.

21. Plaintiff's first scheduled day back to work from medical leave in the first week of January, 2021. Within close proximity of her return to work in the first week of January 2021, Plaintiff was given a final warning for returning from her 2nd daily breaks late. At this point, Plaintiff complained to her supervisors and HR that the discipline was unfair because:

> (a) It related to times when Plaintiff had to stay a little later on breaks to avoid contact with Estacio;
>
> (b) Plaintiff had been crying and explained her need to return a little later on breaks; and
>
> (c) She was upset because Defendants completely failed to enforce a zero-tolerance sexual harassment policy and let Plaintiff suffer for months only to discipline her having to endure the sexual harassment and unsafe work environment (by returning from breaks slightly late at times).

22. Defendants' supervisors had become frustrated with Plaintiff's continual concerns of Estacio working, her reiterating her sexual harassment concerns, and just by way of example, Etienne told Plaintiff she was not permitted to talk to HR during her work shift anymore. And

when Plaintiff expressed concerns to HR, such HR staff refused to give Plaintiff any feedback or information other than personnel matters are private and she should continue to work.

23. Between mid-September of 2020 through mid-January of 2020, Plaintiff estimates that she raised concerns of: (a) sexual harassment; (b) failure to remedy sexual harassment; (c) wanting updates on any investigation into her concerns; and (d) Estacio's return to work *at least* 15-20 times with various supervisors, managers and HR personnel.

24. By mid-January 2021, Plaintiff was suspended from work and later terminated. Plaintiff was only told that someone complained she sent text messages and Facebook threats. Without any opportunity to address any feigned rationale for her termination, Plaintiff was terminated by late January, 2021. Plaintiff did not threaten anyone, hadn't even used Facebook in such timeframes given, and was offered no opportunity to respond to any specific allegation.

25. Plaintiff's termination was communicated to her by HR personnel, Amy and Sarah. These are the very people whom Plaintiff had sought redress for uncorrected sexual harassment and non-abidance with Defendant's zero-tolerance policy.

26. There is simply <u>no question</u> that Plaintiff was terminated in retaliation for continually engaging in protected activity and that Defendants' committed complete neglect in handling all aspects of sexual harassment concerns by women while letting Estacio continue to work.

**Count I**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Sexual Harassment; [2] Hostile Work Environment; and [3] Retaliation)**

27. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6

28. Plaintiff was subjected to a hostile work environment and suspended / terminated due to her protected activities as outlined in this lawsuit.

29. These actions as aforesaid constitute violations of the NJ LAD.

## Count II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Health Discrimination ; and [2] Retaliation)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. Plaintiff disclosed to Defendants she was suffering from anxiety and depression, as well as having crying episodes due to the harassment by Estacio and him following her. Plaintiff further revealed that she needed counseling due to the uncorrected work environment.

32. Plaintiff was terminated for health disclosures, which constitutes unlawful discrimination. And Plaintiff was terminated for utilizing an approximate 3-week medical leave, which (regardless of actual underlying disability), constitutes unlawful retaliation for medical accommodation usage.

33. These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating / retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and

seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/interference at the hands of Defendants' until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Julia W. Clark, Esq.
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: February 22, 2021

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

        **KARPF, KARPF, & CERUTTI, P.C.**

By: _____
        Julia W. Clark, Esq.
        Ari R. Karpf, Esq.

## RULE 4:5-1 CERTIFICATION

1. I am licensed to practice law in New Jersey, and I am responsible for the above-captioned matter.

2. I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

        **KARPF, KARPF, & CERUTTI, P.C.**

By: _____
        Julia W. Clark, Esq.
        Ari R. Karpf, Esq.

## DESIGNATION OF TRIAL COUNSEL

Julia W. Clark, Esquire and Ari R. Karpf, Esquire, of the law firm of Karpf, Karpf, & Cerutti, P.C. are hereby designated trial counsel.

        **KARPF, KARPF, & CERUTTI, P.C.**

By: _____
        Julia W. Clark, Esq.
        Ari R. Karpf, Esq.